### THE ROYAL.

#### (District Court, S. D. New York. June 8, 1905.)

1. TOWAGE—LIABILITY OF TUG FOR GROUNDING OF TOW—MISREPRESENTATION OF DRAUGHT BY MASTER.

A tug, on starting to tow a barge in a shallow stream, is entitled to rely on the statement of the master of the barge as to her draught, and is not bound to examine or to rely upon her draught marks where such statement is made.

2. SAME.

A tug held not liable for the grounding of her tow in Newtown creek, on evidence showing that the master of the barge represented her draught to be seven feet, and that the depth of water at the place of grounding was over nine feet.

In Admiralty. Suit to recover from tug for grounding of tow.

James J. Macklin, for libellant.

Alexander & Ash, for claimant.

ADAMS, District Judge. This action was brought by James T. O'Donnell to recover the damages he sustained through the grounding of his barge Palestine, in Newtown Creek, on the 4th day of March, 1896, while in tow of the steamtug Royal. The barge was bound for Chapman's dock on the creek, near Grand Street, loaded with about 300 tons of sulphur. She was taken in tow by the tug in the morning about 8:40 o'clock, on the port side, and when a point opposite the Kings County Oil Works was reached, she grounded.

The libellant alleges that the barge was run on a ledge of rocks in the middle of the creek and her bottom stove in. He charges the tug with fault:

"(1) In that she did not tow said barge Palestine in safety.

(2) In that she did not tow said barge in such manner as to clear said ledge of rocks.

(3) In that she did not navigate said barge in a proper channel for said tow.

(4) In attempting to start to tow said barge at low water."

The answer alleges:

"On the fourth day of March, 1896, the steamtug Royal which was owned by this claimant approached the barge Palestine at the mouth of Newtown Creek for the purpose of towing her to the head of said Creek; that said Newtown Creek is not navigable to vessels of large draft at all stages of the tide; that at said time the tide was the commencement of the flood; that the master of said tug Royal asked the master of the Palestine what water his vessel was drawing and the latter replied seven feet. As the water in the Creek was sufficient for a vessel of said draft and relying upon the representations of the master of the Palestine, the said tug Royal took said barge in tow alongside and proceeded carefully up said Creek. That she proceeded up said Creek in safety until she reached a point in mid channel about abreast of the Queens County Oil Works when the said barge Palestine took the bottom and sustained some slight injury. That said barge Palestine was drawing at the time much more than her master stated to the master of the Royal and would not have grounded if her master's representations had been true."

It appears that the barge did not strike a ledge of rocks as claimed but grounded on the hard bottom of the creek, in the middle of the channel.

The disputed questions in the case on the facts are: (1) the state of the tide, the libellant contending that it was ebb tide and the claimant that it was flood, and (2) the draught of the boat, the libellant contending that it was between 7 and 8 feet and the claimant that it was fully 9 feet.

1. The testimony shows that on the day in question it was high water at Governor's Island at 11:43 o'clock A. M. At Newtown Creek the tide was 1 hour and 23 minutes later than Governor's Island, so that it was high at the place in question about 1:06 P. M. At Newtown Creek it was low water about 7:30 o'clock A. M. This accident happened at nearly 9 o'clock A. M. and there had at the time been more than an hour of the flood tide. This contention of the claimant is clearly sustained.

2. The draught of the boat is shown by the circumstances to have been in excess of 9 feet. The Royal drew 8½ feet and she passed over the place safely in going down the creek to meet the Palestine. In going up, she did not touch. At this time the tide had swollen several inches. Immediately after the grounding, soundings were made by the tug by means of a pole and over 9 feet were found in the immediate vicinity of the sunken boat. The necessary conclusion seems to be that there were over 9 feet in depth of navigable water where the boat struck. This is confirmed by a government chart in evidence, which shows not less than 10 feet in the place in the channel where the grounding took place.

It is sought by the libellant to overcome the latter facts by testimony from a tide expert, located at Fort Hamilton, who said on this day at that place the tide was unusually low, some 1.95 feet below the normal. Granting that to be the case, and assuming the height of the tide to have been the same at the place of grounding, it does not seem to change the situation. There was still plenty of water for the barge, if the draught had been as stated by her master, upon which the tug was entitled to rely. The Coney Island (D. C.) 115 Fed. 751.

Notwithstanding an unusually low tide, there was ample water for the barge on the draught as given by her master to the tug. It appears by a stipulation between the parties that if the tide expert were recalled, he would testify that the tide on the morning in question was .64 of a foot below the level of mean low water. Such being the case, the libellant's argument in this connection is materially weakened. On the whole, the testimony of this expert rather tends to sustain the claimant's contention than otherwise.

Considerable stress was laid in the argument of the libellant on the draught marks of the boat. The marks were intended for use on the canal and would not have given accurate information as to the draught of the boat in the more buoyant waters of New York. It does not seem that the tug's navigators were bound to examine the boat for marks after the master had stated what her draught was or to rely upon them if found. These marks are not apparently common to all boats of this character used about New York and are not relied upon here for information, when it is obtainable from the master.

Libel dismissed.